UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN RANDALL THOMAS, Plaintiff, v. CITY OF NEW YORK, ET AL., Defendants. | **MEMORANDUM AND ORDER** 24-cv-01562 (LDH) (LKE) |

LASHANN DEARCY HALL, United States District Judge:

Shawn Randall Thomas ("Plaintiff"), proceeding *pro se*, brings the instant action against Defendants City of New York, former Mayor Eric Leroy Adams,[1] and New York Police Department ("NYPD") Officers Keechant Sewell, James Dhanpath, Joleann A. BrewsterColliar, David A. Richter, William J. Walton, and Su Qu (collectively, "Defendants") pursuant to 42 U.S.C. § 1983 alleging violations of the First and Fourth Amendments and N.Y. Civ. Rights Law § 79-P. Defendants move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, to dismiss the complaint in its entirety.

## UNDISPUTED FACTS[2]

On August 10, 2022, Plaintiff began filming outside of the New York City Police Department Transit District 30 police station ("TD30") located in the Hoyt-Schermerhorn train

[1] Plaintiff's Complaint mistakenly names him "Eric Leroy Adam."
[2] On December 27, 2024, and January 27, 2025, Plaintiff and Defendant respectively requested premotion conferences in anticipation of the parties' respective motions for summary judgment. (*See* Order, Feb. 2, 2026.) On February 26, 2025, the Court ordered briefing on the parties' respective motions for summary judgment. (Order, Feb. 26, 2025.) This order included a requirement for the parties to file a consolidated Rule 56.1 statement, (*id.*), but the parties failed to do so. Plaintiff did not file any motion for summary judgment. (Order, Feb. 2, 2026.) Accordingly, the Court terminated the parties' submissions and re-ordered briefing on Defendants' motion for summary judgment, including the filing of Defendants' 56.1 statement of material facts and any opposition to these facts from Plaintiff. (*Id.*) Plaintiff failed to file any opposition brief and opposition to Defendants' 56.1 statement. (*See* Order, Apr. 14, 2026.) Accordingly, the following facts are taken from the Defendants' statements of material facts pursuant to Local Rule 56.1 and are deemed undisputed and unopposed, as facts that are not contradicted by citations to admissible evidence are deemed admitted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir.

station in Brooklyn, New York. (Defs.' Am. Local Rule 56.1 Statement of Material Facts ("Defs.' 56.1") ¶ 1, ECF No. 38-1.) Using his camera, Plaintiff pointed at and zoomed in on a computer screen inside of TD30. (*Id.* ¶ 3.) Defendants BrewsterColliar and Dhanpath approached Plaintiff. (*Id.* ¶ 4.) Defendant Dhanpath then asked if Plaintiff was "okay." (*Id.* ¶ 5.) Plaintiff responded by yelling at Defendant Dhanpath to "get the fuck away" from him, (*id.* ¶ 7), and repeatedly called Defendant Dhanpath, who is Asian, a "little foreign bitch," (*id.* ¶ 8). Plaintiff also repeatedly yelled at Defendant Dhanpath to "suck this dick" while gesturing towards his genitals. (*Id.* ¶ 9.) While Plaintiff yelled at Defendant Dhanpath, other transit users stopped and watched the interaction. (*Id.* ¶¶ 10-11.) Another officer, Defendant Richter, approached Plaintiff and asked him how he was doing. (*Id.* ¶ 12.) Plaintiff continued yelling racially charged statements about Defendant Dhanpath. (*Id.* ¶ 13.) In response, Defendant Richter asked Plaintiff not to disrespect his co-workers. (*Id.* ¶ 14.) Plaintiff replied, "I'll disrespect whoever the fuck I want." (*Id.* ¶ 14.) Plaintiff also yelled at Defendant BrewsterColliar, who is a woman, "[b]itch, I'm not talking to you." (*Id.* ¶ 16.) Defendants—on at least seven occasions—asked Plaintiff to leave the train station. (*Id.* ¶ 17.) Plaintiff refused. (*Id.* ¶ 18.) Defendants Richter, Dhanpath, and Qu then attempted to eject Plaintiff from the train station by escorting him by the arm up the stairs. (*Id.* ¶ 19.) Plaintiff resisted Defendants efforts by refusing to walk, turning away on the stairs, and pulling away from Defendants. (*Id.* ¶¶ 20-22.) As Defendants worked to eject Plaintiff from the station, Plaintiff continued yelling racial epithets, including calling Defendant Qu, who is Asian, a "piece of shit yellow motherfucker." (*Id.* ¶ 19.) Ultimately, Defendant Qu again grabbed Plaintiff's arm and escorted him up the stairs and outside the train station. (*Id.* ¶¶ 21-22.) Once ejected, Plaintiff remained on the sidewalk

---

2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

and continued to use racial and sexually charged epithets while members of the public walked by. (*Id.* ¶ 23.) Plaintiff then requested medical attention and was transported by ambulance to Long Island College Hospital. (*Id.* ¶¶ 24-25.) Plaintiff, however, did not receive any medical treatment because he did not want to wait to be seen by a physician. (*Id.* ¶¶ 26-27.) Plaintiff was never arrested. (*Id.* ¶ 25.)

**STANDARD OF REVIEW**

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255 (citation omitted), but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts, *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (citations omitted).

"It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation and citations omitted), including when facing a summary judgment motion, *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quotation omitted). Nevertheless, the "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id.* at 50 (quotation omitted).

**DISCUSSION**

**I. First Amendment Retaliation**

To sustain a First Amendment retaliation claim, a "plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)). That said, the existence of probable cause is generally sufficient to defeat a claim of First Amendment retaliation. *See Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) ("[The existence of probable cause] will also defeat a First Amendment claim that is premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive, in an attempt to silence her."). Probable cause exists where an officer has "'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Id.* at 214 (citing *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006)).

Against this backdrop, Defendants argue, *inter alia*, that probable cause existed to arrest Plaintiff for disorderly conduct in violation of New York Penal Law § 240.20(1)-(3). (Defs.'

Mem. Law Supp. Mot. Summ. J. ("Defs.' Mem.") at 4-8, ECF No. 38.) Plaintiff does not offer any evidence to rebut Defendants' arguments and puts forth no arguments challenging Defendants' probable cause. (*See generally* Pl.'s Resp. to Defs.' Mot. Summ. J. ("Pl.'s Resp."), ECF No. 35.) Plaintiff effectively concedes this argument. *See e.g., Gardner v. City of New York*, No. 16-CV-06476, 2021 WL 3848112, at *4 (E.D.N.Y. Aug. 27, 2021) ("Because plaintiff did not address this argument in his opposition brief, he has abandoned this claim, and defendants are entitled to summary judgment on it." (citing *Taylor v. City of N.Y.,* 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003))). Perhaps this is for good reason, as the record aptly demonstrates that there was probable cause that Plaintiff committed the crime of disorderly conduct.

Probable cause that a person engaged in disorderly conduct exists "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 1. [a person] engages in fighting or in violent, tumultuous or threatening behavior; or 2. [a person] makes unreasonable noise; or 3. [i]n a public place, [a person] uses abusive or obscene language, or makes an obscene gesture . . . ." N.Y. Penal Law § 240.20(1)-(3). Accordingly, "to provide the crime of disorderly conduct under N.Y. Pen. L. § 240.20 the prosecution must establish three elements: (i) the defendant's conduct must be 'public' in nature, (ii) it must be done with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness as to 'a risk thereof,' and (iii) it must match at least one of the descriptions set forth in the statute." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001).

Plaintiff's conduct meets the standards set forth in N.Y. Penal Law § 240.20. *First*, it is unquestionable that Plaintiff's conduct took place in public, as the conduct occurred inside or on the sidewalk in front of the Hoyt-Schermerhorn train station. (Defs.' 56.1 ¶¶ 1, 3, 23.) *Second*, Plaintiff intended to cause or recklessly risked causing public inconvenience, annoyance or alarm

when, at the train station, he yelled at Defendant Dhanpath to "get the fuck away" from him, (Defs.' 56.1 ¶ 7), called Defendant Dhanpath a "little foreign bitch," (*id.* ¶ 8), and yelled at Defendant Dhanpath to "suck this dick," (*id.* ¶ 10). Plaintiff's intentional and reckless behavior did not stop there. He also yelled to Defendant BrewsterColliar, "[b]itch, I'm not talking to you," (*id.* ¶ 16), and called Defendant Qu a "piece of shit yellow motherfucker," (*id.* ¶ 19). In addition, Plaintiff resisted the NYPD officers' attempt to eject him from the train station. (*Id.* ¶¶ 20-22.) Moreover, that Plaintiff's conduct was intended to cause or recklessly risked causing public inconvenience, annoyance, or alarm cannot be reasonably disputed: Plaintiff's conduct occurred at a public train station on a weekday at approximately 7:15 p.m. when members of the public were reasonably expected to be present. (*Id.* ¶ 1.) Indeed, more than ten people can be seen in the vicinity of the encounter, (*see* Dig. Media Submission Supp. Defs.' Mot. Summ. J. ("Dig. Media") Ex. C, ECF No. 38-5), and at least two people stopped to observe, (Dig. Media Ex. D, 1:05-1:48, ECF No. 38-5). The public nature of Plaintiff's conduct is relevant to the Court's analysis. *See Kistner v. City of Buffalo*, No. 22-cv-3058, 2024 WL 2525332, at *3 (2d Cir. May 24, 2024) ("In determining whether the offender intended to cause public harm or a risk of public harm, courts consider many factors, including the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances." (quotation omitted)). Notably, in the video evidence, Plaintiff admits he "intentionally sought to offend." (Dig. Media Ex. C, 0:00:40-42.) *Third*, Plaintiff's conduct matches not one, but three forms of the prohibited conduct as described in the disorderly conduct statute. *See* N.Y. Penal Law § 240.20 ("A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly

creating a risk thereof: 1. He engages in fighting or in violent, tumultuous or threatening behavior; or 2. He makes unreasonable noise; or 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture . . . ."). That is, Plaintiff demonstrated violent, tumultuous, or threatening behavior by yelling at and pulling away from Defendants, (Defs.' 56.1 ¶¶ 19-20, 22); Plaintiff made unreasonable noise by yelling these obscenities at Defendants, (*see* Dig. Media Ex.s C, D, E, ECF No. 38-5); and the language Plaintiff used was undoubtably abusive and obscene.[3] That Defendants had probable cause to believe that Plaintiff engaged in disorderly conduct in violation of N.Y. Penal Law § 240.20 is plain.[4]

Nonetheless, Plaintiff argues that because Defendants did not arrest him, their probable cause argument is meritless. (Pl.'s Resp. at 1-2.) It is true that "while probable cause 'should generally defeat a retaliatory arrest claim,' a narrow exception exists where, even though officers have probable cause to make arrests, they 'typically exercise their discretion not to do so.'" *Wheeler v. Artola*, 852 F. App'x 589, 591 (2d Cir. 2021) (summary order) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 406–07 (2019)). In these instances, "[a] plaintiff can take advantage of this exception by presenting 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.'" *Id.* (quoting *Nieves*, 587 U.S. at 391). "After making the required showing, the plaintiff's claim may

---

[3] To be clear, the Court does not make a finding with respect to the speech Plaintiff used against police officers. The Court is aware that "[o]nly fighting words directed at police officers can be criminalized, and the fighting words doctrine is probably narrower [in] application in cases involving words addressed to a police officer, because a properly trained officer may reasonably be expected to exercise a higher degree of restraint than the average citizen." *Provost*, 262 F.3d at 159–60 (quotation omitted)).

[4] Defendants also argue that Plaintiff's conduct also violated MTA Rules of Conduct § 1050.7(i), which states that "[n]o person on or in any facility or conveyance shall . . . conduct themselves in any manner which may cause or tend to cause annoyance, alarm or inconvenience to a reasonable person or create a breach of the peace." MTA Rules of Conduct § 1050.7(i). For the reasons set forth relating to Plaintiff's violation of N.Y. Penal Law § 240.20(1)-(3), New York's disorderly conduct statute, the Court also finds Plaintiff violated § 1050.7(i). Accordingly, the evidence supports a finding that Defendants had the lawful authority to eject Plaintiff from the train station. *See* MTA Rules § 1050.11 ("[a]ny person who is observed by a police officer to be violating any of these rules and who may receive or has received a notice of violation therefore is subject to ejectment from the facilities.").

proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause." *Nieves*, 587 U.S. at 407–08 (citation omitted). However, here, Plaintiff failed to present any objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been. Indeed, in opposing Defendants' motion for summary judgment, Plaintiff offers no evidence at all. *See supra* note 1. Accordingly, Plaintiff's argument is without merit.

**II. Excessive Force**

"The Fourth Amendment governs a plaintiff's claims that excessive force was used in connection with an arrest." *Chapdelaine v. Desjardin*, 180 F.4th 454, 468 (2d Cir. 2026) (citing *Mickle v. Morin*, 297 F.3d 114, 120 (2d Cir. 2002)). "'In this context, the reasonableness question is whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (quoting *Mickle*, 297 F.3d at 120). In assessing this question, courts are counseled to pay "'careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id*. (quoting *Matusak v. Daminski*, 165 F.4th 702, 713 (2d Cir. 2026)). Only through this particularized assessment can the court balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)).

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claim because no reasonable jury could find that the officers used unreasonable force

during plaintiff's arrest and plaintiff only suffered a *de minimis* injury. (Defs.' Mem. at 9-11.) The Court agrees.

Here, Plaintiff complains that Defendants grabbed him by his arms and pushed him up the stairs. (Am. Compl. ¶ 18.) However, there is no evidence that Defendants' pushes and shoves were anything other than slight. Indeed, there is no evidence that Plaintiff was harmed by Defendants' contact. Certainly, the video recording of the incident shows none. (Dig. Media Ex. C, 0:02:54-57, 0:03:08-10; Dig. Media Ex. D, 0:01:58-0:02:36; Dig. Media Ex. E, 0:01:52-0:02:30.) It is true that Plaintiff requested medical attention and was transported to the hospital. But it is telling that Plaintiff did not receive any treatment because he did not want to wait to be examined by a physician. (*Id.* ¶¶ 26-27.) Simply put, no reasonable jury could conclude that Defendants' use of force, *i.e.*, the slight pushes ushering him out the train station, was unreasonable or excessive. *See, e.g.*, *Rattray v. Cadavid*, No. 17-CV-8560, 2019 WL 10945334, at *7 (S.D.N.Y. Sept. 10, 2019) (citing *Petway v. City of New York*, No. 12-CV-279, 2014 WL 839931, at *8 (E.D.N.Y. Mar. 4, 2014) ("Plaintiff himself admits that P.O. Westbrook gave him a 'slight shove' causing him no pain or injury and requiring no medical treatment, and such amount of force cannot be considered excessive."); and then *Husbands ex rel. Forde v. City of N.Y.*, No. 05-CV-9252, 2007 WL 2454106, at *13-14 (S.D.N.Y. Aug. 16, 2007) (no excessive force where officer pushed plaintiff away from arrest scene, and plaintiff did not fall or suffer any injury)).

This conclusion is supported when considering the totality of the evidence. *First*, the crime at issue was more than slightly severe because Plaintiff's disorderly conduct was intentional and done in a public transit station at 7:15 p.m. *Cf. Brown*, 798 F.3d at 102 (finding the disorderly conduct crime to be slightly severe because plaintiff conduct only amounted to a

"loud banging on the door of a closed store by someone wanting to use a bathroom, plus the use of loud and nasty language."). *Second*, Plaintiff was actively resisting the officers. Plaintiff refused to walk up the stairs, turned around, and attempted to pull away as the officers worked to eject him from the train station. (Defs.' 56.1 ¶¶ 20-22.) *Third*, the officers could have reasonably perceived Plaintiff's resistance coupled with his shouting as being threatening to their safety. In light of all the facts and circumstances present here, Defendants' grabbing of Plaintiff's arms and pushing against his body to escort him out of the train station was reasonable.

**III. Municipal and Supervisory Liability (Monell Claims)**

"To hold a municipality liable in [] an action, 'a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983); and citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); and then *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 122 (2d Cir.1991)). That is, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citations omitted) (emphasis in original). Accordingly, if a district court "properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct." *Id.*

Defendants argue that Plaintiff's *Monell* claim must be dismissed because there was no underlying constitutional violation, no policy-maker involvement, and no link between any New York City policy and any alleged constitutional violation. (Defs.' Mem. at 14-15.)

As discussed *supra*, the Court has determined Plaintiff's First Amendment retaliation and Fourth Amendment excessive force claims are without merit. The undisputed facts and evidence support a finding that Defendants had probable cause to eject Plaintiff from the station and the force used was reasonable. Defendants' probable cause and reasonable use of force bar Plaintiff's recovery for the claimed constitutional violations. As such, Plaintiff cannot make the prerequisite showing of a constitutional violation to sustain his *Monell* claims. *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) ("Under Second Circuit case law, however, a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor."). Accordingly, the Court need not address Defendants' liability under this claim, and the claim is dismissed.[5]

**CONCLUSION**

Accordingly, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge

[5] Because Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over this state law claims. *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994) (affirming the district court's finding that "[i]t is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims." (quotation omitted)).